**FRANKFORT BUILDERS SUPPLY COMPANY, Inc., Appellant,**

v.

**Lloyd POLLARD et al., d/b/a The Armstrong Agency, et al., Appellees.**

Court of Appeals of Kentucky.

June 21, 1957.

Rehearing Denied Oct. 4, 1957.

---

H. B. Kinsolving, Jr., Shelbyville, for appellant.

Robert F. Matthews, Bernard B. Davis, Shelbyville, for appellees.

**MILLIKEN, Chief Justice.**

Appellant Frankfort Builders Supply Company, Inc., complains about the accounting procedure followed by the trial court in determining that Grover Wise, doing business as Wise Transfer Line, was not insolvent at the time he mortgaged his trucking equipment to the appellee, The Armstrong Agency, carrier of the insurance on Wise's trucking business. The appellant, Frankfort Builders Supply Company, had sought to set aside the mortgage as a fraud on creditors in violation of KRS 378.060, which reads:

"Any sale, mortgage or assignment made by a debtor and any judgment suffered by a defendant, or any act or device done or resorted to by a debtor, in contemplation of insolvency and with the *design* to prefer one or more creditors to the exclusion, in whole or in part, of others, shall operate as an assignment and transfer of all the property of the debtor, and shall inure to the benefit of all his creditors, except as provided in subsection (2) of KRS 378.090, in proportion to the amount of their respective demands including those which are future and contingent. Nothing in KRS 378.060 to 378.090 shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with the mortgage, if the mortgage is lodged for record within thirty days after its execution." (Our emphasis.)

The trial court's findings of fact were based on an audit of Mr. Wise's effects after his death which showed Mr. Wise's estate solvent by a margin of $49.55 without attaching any value to the going concern or good will value of his 25-year old trucking business, which had operated at a reasonable profit for the 4-year period immediately preceding Mr. Wise's death.

Although Mr. Wise's indebtedness to the appellant amounted to $1,820.66 on March 22, 1955, the date of the alleged preferential mortgage to the Armstrong Agency, it amounted to $2,529.41 at the time of Mr. Wise's death on May 21, 1955. It is significant that Mr. Wise gave the mortgage to the Armstrong Agency not only to cover past due insurance premiums, but to also cover the cost of his insurance for the balance of the year 1955. In other words, $1,885.89 of the $7,091 total amount of the chattel mortgage was for the purpose of staying in business for the year 1955; it represented unearned insurance premiums, a liability created simultaneously with the mortgage and hence not within the purview of KRS 378.060. Furthermore, the payment for future insurance clearly indicates that it was not the "design" of Mr. Wise to create a preference among his creditors,

but rather to continue in business and to meet all obligations.

Without detailing appellant's contentions, suffice it to say that they claim Mr. Wise owed $1,325.70 in addition to the amount used in the audit, which would have put his business in the red by about $1,276.15— instead of in the black $49.55—at the time of the execution of the mortgage. On the other hand, the appellant accepted the audit figure of $9,348.14 set on the mortgaged equipment, yet it sold for $10,701 several months after the death of Mr. Wise, thus making the value of Mr. Wise's assets actually worth $1,352.36 more than the audit estimate.

We concur, therefore, with the conclusion of the trial court that the mortgage given by Mr. Wise to the Armstrong Agency was not proscribed by KRS 378.-060 as being an attempt on the part of Mr. Wise to give a preference to one of his creditors in contemplation of insolvency. The trial court's conclusions are not clearly erroneous. CR 52.01.

The judgment is affirmed.